UNITED STATES DISTRICT COURT        FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CARLOS LIZARDI,                                       MEMORANDUM
                                                                            AND ORDER
             Petitioner,                            06 CV 2848 (JG)

         v.

ROBERT ERCOLE,

         Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

A P P E A R A N C E S:

        CARLOS LIZARDI
             Reg. #02A6633
             Green Haven Correctional Facility
             PO Box 4000
             Stormville, NY 12582-1000
             Petitioner *Pro Se*

        CHARLES J. HYNES
             Kings County District Attorney
             Renaissance Plaza
             350 Jay Street
             Brooklyn, New York 11201-2908
       By:    SETH LIEBERMAN
             Assistant District Attorney
             Attorneys for Respondent

JOHN GLEESON, United States District Judge:

        Carlos Lizardi petitions for a writ of habeas corpus challenging his 2002 conviction in the Supreme Court of the State of New York, Kings County, following a jury trial, of multiple counts arising out of an armed robbery and assault of a family in their home in Brooklyn. For the reasons set forth below, the petition is denied.

BACKGROUND

A.   The Offense Conduct

On the afternoon March 21, 2002, Santa Heredia was home with her husband, Juan Olivo, at 193 Palmetto Street in Brooklyn. Heredia was in the kitchen. Olivo was sitting in the dining room, having just arrived home from his job for lunch. At approximately 2:30 p.m., two men entered the apartment. One approached Heredia from behind, put a gun to her neck, and told her not to move. The other approached Olivo and pointed a gun at him. The intruders spoke Spanish. Heredia and Olivo, immigrants from the Dominican Republic, identified the accents as Puerto Rican.

Making efforts to shield their faces, the intruders took Heredia and Olivo to the living room, bound them with duct tape, and covered them with a blanket. They demanded to know where the money was, threatening to kill Heredia and Olivo if they did not comply. Heredia led the men to a drawer in the bedroom where she had $1,000, and showed them where her purse was. The intruders then returned her to the living room and covered her with a blanket, where she pled for her life. The intruders stepped on her hand, causing it to swell.

The intruders also took $500 from Olivo's wallet, as well as his jewelry and cellular telephone. They beat him in order to elicit information about more money, but Olivo told the men that he had given them all the money already.

While the intruders were searching the house for more money or valuables, ten year-old Magalys Olivo arrived home from school. One of the men met her at the door and led her to her room, without allowing her to see his face. He initially told her that he was a police

officer. At some point soon after her arrival, Magalys was restrained with rope in the living room and covered with a blanket. Magalys wept during the ordeal, asking for her parents.

The intruders left the house with video equipment, Heredia's cellular phone, several thousand dollars that represented the proceeds of a tax refund, as well as the cash, jewelry, and cellular phone discussed above.

Police officers who responded to a 911 call were able to lift a fingerprint from the tape that bound Olivo's legs. Police later identified the print as belonging to Lizardi. Approximately one month after the incident, Heredia was shown a lineup that included Lizardi. She immediately identified him as the man who had pointed a gun at her husband shortly after the men entered the apartment. Neither Olivo or Magalys were able to identify Lizardi.

Lizardi was arrested and charged with the following crimes: two counts of burglary in the first degree; two counts of robbery in the first degree; two counts of assault in the second degree; two counts of robbery in the third degree; two counts of criminal possession of a weapon in the fourth degree; four counts of robbery in the second degree; burglary in the second degree, grand larceny in the third degree; assault in the third degree; endangering the welfare of a child; three counts of kidnapping in the second degree; three counts of unlawful imprisonment in the second degree.

B.  The Procedural History

   1.  *The Trial Court Proceedings*

At trial, the prosecutor's opening statement emphasized the "unspeakable terror" that the victims suffered when they were "tied like animals." Tr. 16. The prosecutor also highlighted the immigrant family's hard work to seek a better life in the United States, and

3

attempted to further dramatize what Heredia and Olivo might have been experiencing during the events on March 21, 2002. Tr. 18-19. The prosecutor then discussed the suffering that Magalys must have felt upon her return home from school, and generally referred to the events described above as a "reign of terror." Tr. 21. When defense counsel objected to certain of these remarks, the court issued limiting instructions to the effect that counsel's remarks are not evidence. Tr. 14-15, 19. The court also advised the jury that "sympathy is not to play a part in how you evaluate the evidence that you hear." Tr. 27.

During the presentation of the evidence, the prosecutor elicited from Heredia that she had immigrated from the Dominican Republic and then worked in a factory for eight years, but was laid off shortly after September 11. Tr. 101-109. Heredia also testified that her and Olivo's home was "a family house," where she had always felt safe in the past. Tr. 104-107. Heredia then testified about the events of March 21, 2002, including her pleas to the intruders "not to kill us," and to "let us live." Tr. 141.

The prosecutor also presented evidence of the matching fingerprint and a description of the lineup. Heredia testified that she had also recognized Lizardi during the incident as one of two men she had seen attempt to enter the front door of the apartment building approximately two hours before the incident took place. Tr. 117, 128.

During summation, the prosecutor stated that the "safety, security, [and] dignity" of the family had been compromised, and they had been "tied up like animals." Tr. 820. Defense counsel objected at times during the summation, and the trial court responded with limiting instruction to the jury that "what counsel says is not evidence in the case." Tr. 821, 836. When the prosecutor admonished the jury not to feel "bad for the defendant," the defense again

4

objected. Tr. 849. The court sustained the objection and instructed the jury that "[s]ympathy is not to play any part for the victim, or the defendant." *Id.*

At the close of evidence, defense counsel moved for a mistrial on the ground that the prosecutor had attempted to incite sympathy from the jury. The court rejected the motion, reminding defense counsel that most of its objections had been sustained, and the jury had been appropriately instructed. Tr. 852.

On December 3, 2002, Lizardi was convicted of burglary in the first degree, two counts of robbery in the first degree, two counts of assault in the second degree, three counts of kidnapping in the second degree, endangering the welfare of a child, and criminal possession of a weapon in the fourth degree. He was sentenced to concurrent prison terms of 25 years to life on the burglary, robbery and kidnapping counts, twelve years to life on the assault counts, and one year for the remaining counts.

2. *The Direct Appeal*

On appeal, Lizardi argued that "[t]he prosecutor's tireless exploitation of the jurors' sympathy and fear, from his dramatic opening statement, which was devoted exclusively to sensationalizing the 'reign of terror' the victims had suffered, particularly the ten-year-old girl, through his presentation of evidence, to his inflammatory summation, deprived appellant of a fair trial." On July 19, 2004, the Appellate Division rejected this argument, ruling that it was partially unpreserved for appellate review, and in any event, "the remarks either constituted a description of the chronology of events that the prosecution intended to prove, or were harmless error under the circumstances." *People v. Lizardi*, 779 N.Y.S.2d 785 (2d Dep't 2004).

5

On August 31, 2004, the New York Court of Appeals denied leave to appeal. *People v. Lizardi*, 3 N.Y.3d 677 (2004) (G.B. Smith, J.).

4. *The Instant Petition*

Lizardi has submitted this petition pursuant to 28 U.S.C. § 2254, advancing arguments identical to those raised on direct appeal.[1]

DISCUSSION

A. <u>The Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the

---

[1] Though it is dated November 17, 2005, the petition was filed on May 31, 2006. Any issue about its timeliness has been waived by the respondent.

[2] Habeas relief is also warranted where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). That subsection is not relevant here.

6

Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under AEDPA's deferential standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."). Interpreting *Williams*, however, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

AEDPA's deferential standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

7

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001). However, if a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

B.    Lizardi's Prosecutorial Misconduct Claim

"It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992). When a federal habeas court evaluates a prosecutorial misconduct claim of the sort Lizardi advances, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *See also Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (relief is available only where the court "find[s] that the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights.")

In order to determine whether a defendant's due process rights have been violated, a habeas court should examine whether or not a prosecutor's comments actually prejudiced the defendant, *i.e.*, whether the comments "had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994), *cert. denied*, 516 U.S. 1152 (1996). The Second Circuit has adopted a three-part test for determining whether

a prosecutor's improper argument deprived the defendant of a fair trial, considering "(1) the severity of any misconduct, (2) the measures taken to cure the misstatements, and (3) their likely effect on the outcome." *United States v. Forlorma*, 94 F.3d 91, 95 (2d Cir. 1996); *see also Bentley*, 41 F.3d at 824.

Applying the deference AEDPA requires to a state court's decision on the merits,[3] I find that the Appellate Division's decision was not an unreasonable application of, clearly established Federal law. Though some of the prosecutor's comments were inappropriate, they hardly rose to the level of infecting the proceedings so much that Lizardi may have been denied a fair trial. The trial court instructed the jury at least five times that counsel's statements were not to be considered as evidence (Tr. 14, 15, 19, 821, 836), and also instructed the jury that sympathy is not to play a part in the evaluation of evidence. Tr. 27, 849. Furthermore, the jury's requests (1) to hear a readback of testimony related to the fingerprint testing (Tr. 925); (2) to view the actual latent and live scan fingerprints (Tr. 911); and (3) to hear the legal definition of kidnapping and unlawful imprisonment (Tr. 924) reflected its focus on the evidence, rather than on the prosecutor's inappropriate comments.

In short, the severity of the prosecutor's misconduct did not outweigh the curative efforts undertaken by the court. Moreover, nothing suggests that the prosecutor's comments had a greater impact upon the jury than the physical evidence in the case did.

---

[3] The respondent has argued that Lizardi's claim is unexhausted (and therefore procedurally barred) with respect to the prosecutor's presentation of evidence, since Lizardi included reference only to the prosecutor's opening statement and summation in his application for leave to appeal to the Court of Appeals. Because I reject this aspect of the claim on the merits, I need not determine whether or not it is in fact procedurally barred.

CONCLUSION

For the foregoing reasons, the petition is denied. As Lizardi has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

So ordered.


John Gleeson, U.S.D.J.


Dated: February 15, 2006
      Brooklyn, New York